UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ARMANDO P., § | |
|    PLAINTIFF, § | |
| § | |
| v. § | CASE NO. 3:20-CV-2495-BK |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|    DEFENDANT. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks judicial review of the Commissioner's final decision denying his claim for a period of disability and disability insurance benefits, as well as supplemental security income under Title II of the Social Security Act (the "Act"). He seeks benefits retroactive to October 2017. Doc. 18-1 at 41. Pursuant to 28 U.S.C. § 636(b) and the parties' consent to proceed before the undersigned United States magistrate judge, the Court now considers the parties' cross-motions for summary judgment. Doc 22; Doc. 23.[1] For the reasons that follow, Plaintiff's *Motion for Summary Judgment* is **GRANTED**, Defendant's *Motion for Summary Judgment* is **DENIED**, and this case is **REVERSED AND REMANDED** for further proceedings.

**I. BACKGROUND**

    **A.**    **Facts**

Plaintiff was 41 years old as of his amended onset date of disability. Doc. 18-1 at 41; Doc. 18-1 at 214. He has a ninth-grade education and past work experience as an industrial truck

---

[1] The Court notes that Defendant has again filed a response to Plaintiff's motion rather than a cross-motion for summary judgment in violation of Local Rule 9.1b and the Court's *Scheduling Order*. *See* Doc. 21. In the interest of expediency, however, the Court construes Defendant's response brief as a motion for summary judgment.

operator. Doc. 18-1 at 63, 251. In terms of his relevant medical history, the evidence reflects that Plaintiff has a long history of chronic psychological issues, including schizophrenia, major depressive disorder, bipolar disorder, anxiety, paranoia, panic attacks, hallucinations, trouble concentrating, and memory problems. *See, e.g.*, Doc. 18-1 at 250.

Plaintiff received ongoing mental health treatment through Metrocare for schizophrenia, including monthly Haldol injections and other medications. Doc. 18-1 at 469. At times, Plaintiff demonstrated normal concentration, memory and logical thought content and denied having hallucinations. *See, e.g.*, Doc. 18-1 at 431, 433-34, 468-69, 471. He sometimes reported that he was doing well, attending to his activities of daily living, and he was cooperative and attentive during treatment sessions. *See, e.g.*, Doc. 18-1 at 414, 449, 468-69, 471, 474. During these times, Plaintiff interacted appropriately with medical personnel and was generally noted to be cooperative. *See, e.g.*, Dec. 18-1 at 410, 433, 436, 454-56, 466. Plaintiff also indicated that he could visit friends and work for short periods of time before losing a job. *See, e.g.*, Doc. 18-1 at 390, 394-95, 431, 435, 445, 452.

Other times, however, Plaintiff complained of being easily stressed, and he was (1) paranoid; (2) depressed; (3) anxious; (4) hearing voices and saw shadows; (5) having racing thoughts and a feeling that people wanted to hurt him; (6) sleeping more than normal; (7) having difficulty concentrating; (8) confused; and (9) frustrated due to losing jobs. *See, e.g.*, Doc. 18-1 at 406-07, 415, 424-25, 427, 464, 468, 476. During one session with a therapist, Plaintiff suddenly stopped talking and left the room three times. Doc. 18-1 at 427. On occasion, he would have "blank moments" during therapy when he lost the "connection," and things had to be repeated to him. Doc. 18-1 at 441. Plaintiff also reported that he was "stable but not well," and the therapist noted he was not functioning normally. Doc. 18-1 at 407. Additionally, Plaintiff

expressed that he was very frustrated about losing six jobs in the prior two years, but when he tried to work, "the voices" were too much for him. Doc. 18-1 at 406, 476. The therapist noted that Plaintiff's anxiety increased the closer it got to the time for his next shot, and he would become angry. Doc. 18-1 at 441.

In an April 2018 medical source statement, Dr. Ikechukwu Ofomata, M.D., of Metrocare, reported that Plaintiff had substantial loss in his ability to understand and carry out instructions, sustain concentration and persistence, respond appropriately to supervisors and co-workers, and adapt to changes in a routine workplace setting. Doc. 18-1 at 373-75. Dr. Ofomata also reported that Plaintiff would, on average, be absent from work more than four days a month. Doc. 18-1 at 375.

In September 2019, ARNP Charles O. Ejiofor of Metrocare completed a "Functional Disability Assessment" on Plaintiff's behalf. He reported that Plaintiff (1) had no significant loss in his ability to apply common sense understanding to carry out simple one or two-step instructions; (2) had a substantial loss in his ability to sustain concentration and persistence and adapt to changes in a routine work setting; and (3) some-to-substantial loss in his ability to respond appropriately to supervisors, co-workers, and usual work situations. Doc. 18-1 at 461-62. ARNP Ejiofor concurred with Dr. Ofomata that Plaintiff would miss more than four days of work per month on average. Doc. 18-1 at 462.

    **B.**    **The ALJ's Findings**

In December 2019, the ALJ ruled that Plaintiff was not disabled under the Act. Doc. 18-1 at 30. The ALJ found that Plaintiff had the severe impairment of schizophrenia, but the impairment failed to meet or equal a listed impairment for presumptive disability under the applicable regulations. Doc. 18-1 at 23-25. The ALJ determined that Plaintiff retained the

residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with some restrictions based on his mental health. Doc. 18-1 at 25. While Plaintiff was unable to perform his past relevant work, the ALJ found that he could perform other jobs that existed in the national economy. Doc. 18-1 at 29-30.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available

4

in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Id.*; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  The reviewing court does not reweigh the evidence or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record.  The Court is not obligated to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III.  ARGUMENT AND ANALYSIS

While Plaintiff raises three arguments, it is only necessary to address one because it is dispositive.  Specifically, Plaintiff asserts the ALJ erred in not addressing whether he could maintain employment on a regular and continuing basis.  Doc. 22 at 21.  Defendant responds that this finding was not necessary because the evidence does not reflect that Plaintiff's symptoms "wax and wane."  Doc. 23-1 at 7-8.  The Court disagrees.

The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (citation omitted). "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs." *Id.* at 822. Rather, "it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Id.* (emphasis in original).

An ALJ need not always make a separate finding that a claimant who can find a job can also maintain it. See *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). Sometimes, however, the nature of a claimant's medical impairment and attendant symptoms might require "separate consideration of whether the claimant is capable of maintaining employment." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam) (citing *Watson v. Barnhart*, 288 F.3d 212, 217-18 (5th Cir. 2002)). A separate finding is necessary, for instance, when "the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Further, "to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Id.* The *Frank* court gave an example of the type of situation that might require a separate finding that a claimant is able to maintain employment: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.*

Ascertaining whether a claimant is disabled because of a mental condition, however, can be a "difficult task." *Singletary*, 798 F.2d at 820. In some cases, a mental impairment is so severe that the claimant is presumed to be incapable of working. *Id.* at 820-21 (citation omitted). Frequently, however, a claimant may be able to work for short periods of time but cannot remain employed for a significant length of time due to the nature of his mental impairment.

> Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

*Id.* at 821 (quotation omitted).

In *Singletary*, for example, the court held that while the claimant may have been able to find any number of jobs and maintain the position for a short period of time, his schizophrenia, delusions, and other personality disorders rendered him unable to remain employed for a significant period of time. *Id.* at 821-22. Indeed, the claimant's personal history indicated that he was never able to hold a job for long periods of time, and every doctor who examined him had determined that he suffered from some manner of mental disorder, including schizophrenia, various psychoses, delusions, and an antisocial personality. *Id.* at 820, 822.

While evidence of "good days and bad days" does not establish an impairment necessitating an explicit finding under *Frank*, *see Perez*, 415 F.3d at 465, the evidence in this case is not so limited. As can be seen above, the records reflect that Plaintiff's mood waxed and waned. He reported feeling well and was attentive some days, while other days he exhibited paranoia, anxiety, panic, and difficulty concentrating, and he stated he was experiencing

7

hallucinations. As noted, he was diagnosed with schizophrenia among a litany of other psychological problems.

This case is indistinguishable from *Singletary*, which also involved a schizophrenic claimant. The court there held that while the claimant could potentially find a job and briefly maintain it, his mental illness rendered him incapable of remaining employed for any significant period of time. *Singletary*, 798 F.2d at 821-22. Similarly, Plaintiff's personal history indicates that he repeatedly lost jobs due to his illness, and Dr. Ofomata and ARNP Ejiofor both expressed doubts about his ability to work. Doc. 18-1 at 375, 406, 464, 476.

Under these circumstances, *Frank* requires that the ALJ specifically assess Plaintiff's ability to hold whatever job he may find for a significant length of time. Because Plaintiff's mental impairment waxes and wanes in severity, the ALJ's RFC determination does not include the necessary finding. *See Frank*, 326 F.3d at 619. By failing to make the specific determination required by *Frank*, the ALJ thereby committed legal error. *Moore v. Sullivan*, 895 F.2d 1065, 1069-70 (5th Cir. 1990). The Court of Appeals for the Fifth Circuit has left lower courts no discretion to determine whether such an error was harmless. *Id.* at 1070. When the ALJ "has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Id.* (quotation omitted). Accordingly, this case must be reversed and remanded.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 22, is **GRANTED**, Defendant's construed *Motion for Summary Judgment*, Doc. 23, is **DENIED**, and

this case is **REVERSED AND REMANDED** for further proceedings consistent with these findings.

    **SO ORDERED** on March 28, 2022.

_[signature]_
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE